## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

NATIONWIDE MUTUAL  :
INSURANCE COMPANY, *et al.*,  :
                      :
        Plaintiffs,  :
                      :    CIVIL ACTION NO.
      v.  :    2:13-CV-00032-RWS
                      :
BADER & ASSOCIATES, INC.,  :
*et al.*,  :
                      :
        Defendants.  :

## <u>ORDER</u>

This case is before the Court for consideration of Plaintiffs' Motion for Summary Judgment [28]. Defendants have not filed a response to the Motion for Summary Judgment. Therefore, pursuant to Local Rule 7.1B, the Motion is deemed to be unopposed.

### Background[1]

Defendants Ira and Hildegard Weinstein ("Weinsteins") and their companies Green Star Properties, LLC, Red Star Properties, LLC, and Green Star Properties, LLC (collectively with the Weinsteins, "Claimants") filed a

---

[1] The Background is taken from Plaintiffs' Undisputed Material Facts [28-2] to which Defendants filed no response. Therefore, the Facts are deemed admitted. L.R. N.D. Ga. 56.1B.(2)a(2).

lawsuit in the Superior Court of Forsyth County, Georgia, seeking damages against Defendants Bader & Associates, Inc. ("Bader") and Jeffrey B. Moore ("Moore"), as well as others. The Claimants allege they contacted Moore in response to an advertisement for the sale of homes that they saw on November 13, 2007. The Claimants contend that Moore was a realtor with real estate brokerage firm Bader.

At the time, the Claimants were looking to purchase several homes with three to four bedrooms for investment purposes. After looking at several homes, Claimants ultimately contracted to purchase 23 properties, with each contract listing Moore as the owner's agent and Bader as broker. The properties were purchased in three rounds of closings on December 20, 2007, March 19, 2008, and May 8, 2008. Several of the properties had been built by Moore through his corporations, Cornerstone Development Services, Inc. and Dream Home Construction.

The Claimants allege that part of the purchase price of the properties included one year of management services to be provided by Cumming Home Property Management; therefore, following the closings, they entered into management agreements for Cumming Home to provide services for the rental,

leasing, operating, and management of the properties. The Claimants contend

that Moore owed them a fiduciary duty as a real estate agent for Cumming

Home, and therefore, was required to act in Claimants' best interest in the rental

transactions involving the leasing and management of the properties. The

Claimants further contend that Moore breached his fiduciary duties.

The Claimants allege that they learned about septic problems at some of

the properties in May 2010, when a tenant reported raw sewage spilling on the

yard. The Claimants also allege that, following the first report, other

tenants reported that raw sewage had spilled onto their yards in September 2010

and February 2011. The Claimants allege that, in November 2010, as a result of

the septic issues their property management company informed them that for

legal reasons, all of the properties would be marketed and rented based on

septic capacity instead of physical bedroom count. According to the Claimants,

the notice prompted them to obtain copies of the septic permits and building

permits for the properties, which revealed that 20 of

the properties had more bedrooms than allowed by the permits and insufficient

septic capacity to support the number of physical bedrooms.

The Claimants allege that Moore (as well as the other defendants in the liability case) made numerous misrepresentations regarding the properties, including failing to disclose that the properties had more bedrooms than allowed by the permits and falsely advertised the number of bedrooms. The Claimants contend that Moore had a duty to disclose these issues as the selling realtor and a person involved in the initial development and construction of many of the properties. The Claimants further contend that Moore had actual knowledge of these issues and his failure to disclose was fraudulent, in bad faith, and cannot be the result of mistake or oversight. The Claimants also contend that Bader is liable for Moore's false representations and other conduct.

In the liability case, the Claimants seek to recover compensatory damages, punitive damages, and attorneys' fees against Moore and Bader based on theories of fraud, violation of the Fair Business Practices Act, breach of fiduciary duty (as to Moore only), and negligent misrepresentation. According to the Claimants, they have suffered damages since they have been forced to 'under-lease' the properties, and are therefore, losing rental income. (contending that the violations of the Fair Business Practices Act caused

4

"economic harm"). Plaintiffs have agreed to defend Bader and Moore under reservation of rights.

Moore worked as an independent contractor, not an employee for Bader during the entire time period involved in the transactions at issue in the liability case and until October 1, 2010. According to his agreement with Bader, Moore was an independent contractor and not an employee of Bader and, as such, Moore would determine when, how and where he would act as a real estate agent. Further, the agreement states that Moore would also be responsible for maintaining any types of insurance he deemed necessary or advisable in connection with his business activities, including but not limited to errors and omissions, liability, or medical coverage.

Plaintiffs issued the following Premier Businessowners Policies to Bader as the named insured:

- AMCO policy number ACP BPO 2312454547 forDecember 2, 2007 to December 2, 2008;

- AMCO policy number ACP BPO 2322454547 for December 2, 2008 to December 2, 2009;

- Nationwide Mutual policy number ACP BPOM 2332454547 for December 2, 2009 to December 2, 2010;

5

- Nationwide Mutual policy number ACP BPOM 2342454547 for December 2, 2010 to December 2, 2011; and

- Nationwide Mutual policy number ACP BPOM 2352454547 for December 2, 2011 to December 2, 2012

(collectively, "PBO Policies").

Nationwide Mutual issued the following Commercial General Liability

Policies to Bader as the named insured:

- Policy number ACP GLO 2302890020 for December 2, 2007 to December 2, 2008;

- Policy number ACP GLO 2312890020 for December 2, 2008 to December 2, 2009;

- Policy number ACP GLO 2322890020 for December 2, 2009 to December 2, 2010;

- Policy number ACP GLO 2332890020 for December 2, 2010 to December 2, 2011; and

- Policy number ACP GLO 2342890020 for December 2, 2011 to December 2, 2012

(collectively, "CGL Policies").

The Policies all contain liability coverage forms that grant coverage for

"'property damage' only if: … [t]he … '[p]roperty damage' is caused by an

'occurrence' … [and] [t]he … 'property damage' occurs during the policy

period." ([Docs. 1-5] p. 54; [1-6] p. 50; [1-7] p. 48; [1-9] p. 8; [1-11] p. 8; [1-

12] p. 15; [1-13] p. 11; [1-14] p. 11; [1-15] p. 13; [1-16] p. 13.) The Policies

define "property damage" as "[p]hysical injury to tangible property, including

all resulting loss of use of that property," or "[l]oss of use of tangible property

that is not physically injured." ([Docs. 1-5] p. 76; [1-6] p. 72; [1-7] p. 70; [1-9]

p. 30; [1-11] p. 28; [1-12] p. 29; [1-13] p. 25; [1-14] p. 25; [1-15] p. 27; [1-16]

p. 27.) The Policies define "occurrence" as "an accident, including continuous

or repeated exposure to substantially the same harmful conditions." ([Docs. 1-5]

p. 75; [1-6] p. 71; [1-7] p. 69; [1-9] p. 29; [1-11] p. 27; [1-12] p. 28; [1-13] p.

24; [1-14] p. 24; [1-15] p. 26; [1-16] p. 26.)

The PBO Policies contain an endorsement titled "LIMITATION OF

COVERAGE – REAL ESTATE OPERATIONS," which limits coverage, in

pertinent part, to "'property damage' arising out of: (1) the ownership,

operation, maintenance or use of such part of any premises [Bader] use[s] for

general office purposes; or (2) premises listed with [Bader] for sale …." ([Docs.

1-5] p. 95; [1-6] p. 91; [1-7] p. 89; [1-9] p. 49; [1-11] p. 49.) The CGL Policies

contain an endorsement titled "LIMITATION OF COVERAGE TO

DESIGNATED PREMISES OR PROJECT," which likewise limits coverage, in

pertinent part, to "'property damage' … arising out of: (1) the ownership,

7

maintenance, or use of the premises shown in Schedule and operations

necessary or incidental to those premises….” ([Docs. 1-12] p. 33; [1-13] p. 27;

[1-14] p. 29; [1-15] p. 31; [1-16] p. 31.) The Schedule, in turn, refers to the

Declarations Page, which lists Bader's business address. ([Docs. 1-12] pp. 11,

33; [1-13] pp. 7, 27; [1-14] pp. 7, 29; [1-15] pp. 9, 31; [1-16] pp. 9, 31.) The

PBO Policies exclude coverage for "'property damage' arising out of the

ownership, maintenance or use, including all related operations, of property in

relation to which [Bader] or any insured is acting in any fiduciary or

representative capacity." ([Docs. 1-5] p. 60; [1-6] p. 56; [1-7] p. 54; [1-9] p. 14;

[1-11] p. 14.) The PBO Policies also exclude coverage for "'property damage'

that arises out of or is a result of the rendering of, or failure to render, any

professional service, treatment, advice or instruction. This exclusion includes,

but is not limited to any: (1) legal, accounting, insurance, real estate, financial,

advertising or consulting service, advice or instruction….” ([Docs. 1-5] pp. 60-

61; [1-6] pp. 56-57; [1-7] pp. 54-55; [1-9] pp. 14-15; [1-11] p. 14.) The

Policies' liability coverage forms contain a section titled "WHO IS AN

INSURED," which defines the individuals and entities that qualify as an

"insured," in pertinent part, as Bader's "'employees'…but only for acts within

the scope of their employment by [Bader] or while performing duties related to the conduct of [Bader's] business." (Docs. 1-5 p. 67; 1-6 p. 63; 1-7 p. 61; 1-9 p. 21; 1-11 pp. 20-21; 1-12 pp. 22-23; 1-13 p. 19; 1-14 p. 19; 1-15 p. 21; 1-16 p. 21.) The CGL Policies contain a "TOTAL POLLUTION EXCLUSION" Endorsement, which excludes coverage for "'property damage' which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." ([1-12] p. 39; [1-13] p. 33; [1-14] p. 35; [1-15] p. 37; [1-16] p. 37.) "Pollutants," in turn, is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." ([Docs. 1-12] p. 28; [1-13] p. 25; [1-14] p. 25; [1-15] p. 27; [1-16] p. 27.)

## Discussion

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings,

9

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which

AO 72A
(Rev.8/82)

are reasonable.  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

Plaintiffs filed this declaratory judgment action to determine whether

they owe coverage to Defendants Bader or Moore under any of the insurance

policies at issue. Bader and Moore seek coverage for the liability claims

asserted by the Claimants in the Forsyth County litigation. The Court concludes

that Moore and Bader are not entitled to coverage under the policies and that

Plaintiffs are entitled to summary judgment.

The damages claimed by Claimants are purely economic losses which do

not constitute "property damage" under the definition in the Policies at issue.

Because the liability claims do not allege "property damage," as defined in the

11

Policies there is no coverage as a matter of law. Also, the Policies limit coverage to specified premises. The 23 properties purchased by Claimants are not covered under the Policies.

The Policies also require "property damage" to have been caused by an "occurrence," which the Policies define as an "accident," which Georgia law defines in this context as "'an unexpected happening without intention or design'. . . 'event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result'. . . 'something that occurs unexpectedly or unintentionally.'" Taylor Morrison Services, Inc. v. HDI-Gerling Am. Ins. Co., 293 Ga. 456, 460 (2013). Claimants' liability claims for fraud and violation of the Fair Business Practices Act are not "occurrences" as they are "absolutely and necessarily inconsistent with the notion of an accident." Taylor, 293 Ga. at 465. Also, exclusions included in the Policies preclude coverage as a matter of law. The "Total Pollution Exclusion" in the CGL Policies; the "Fiduciary Duty" exclusion in the PBO Policies; and the "Professional Services" exclusion in the PBO Policies apply.

12

Finally, Moore was not an insured under the Policies because he was an independent contractor and not an employee of Bader. Thus, the Court concludes that the Policies provide no coverage to Moore as a matter of law.

### Conclusion

Based on the foregoing, Plaintiffs' Motion for Summary Judgment [28] is hereby **GRANTED**. The Clerk shall enter judgment in favor of Plaintiffs and close the case.

**SO ORDERED**, this  _22nd_  day of January, 2014.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

13